

# TRACY WINKLER
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
August 29, 2012 02:22 PM
     TRACY WINKLER
    Clerk of Courts
  Hamilton County, Ohio
  CONFIRMATION 180493
```

**JEFF POTTS**

vs.

**ABUBAKAR ATIQ DURRANI**

**A 1206877**

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 12

EFR200

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
Case No.: _____

JEFF AND CHERYL POTTS

      Plaintiffs

v.

ABUBAKAR ATIQ DURRANI, M.D.
4555 Lake Forest Drive, Suite 150
Cincinnati, OH 45242
    (Serve via Certified Mail)

And

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC. [CAST]
4555 Lake Forest Drive, Suite 150
Cincinnati, OH 45242

Serve: CT Corporation System
1300 East 9th St. Ste 1010
Cleveland, OH 44114
    (Serve via Certified Mail)

    Defendants.

Judge _____

COMPLAINT & JURY DEMAND

Come now the Plaintiffs, Jeff and Cheryl ("Cheri") Potts, by and through counsel, and for their Complaint, state as follows:

### PARTIES

1. Plaintiffs, Jeff Potts and Cheri Potts are married residents of Hamilton County, Ohio.

2. At all times relevant herein, Center for Advanced Spine Technologies, Inc. ("CAST") is and was a duly licensed corporation organized and existing under the laws of the State of Ohio and having its principal place of business located at 4555 Lake Forest Dr., Suite 150, Cincinnati, Ohio 45242. The statutory agent for Center For Advanced Spine Technologies, Inc. is CT Corporation System, whose mailing address is 1300 East Ninth Street, Suites 1010, Cleveland, Ohio 44114.

1

3. At all times relevant herein, Defendant Abubakar A. Durrani, M.D., who is also known as A. Atiq Duranni, M.D. ("Defendant Durrani"), was a duly licensed physician in the State of Ohio, and was a physician who provided surgical care and treatment to Jeff Potts on October 15, 2010. Defendant Dr. Duranni is a representative of Defendant CAST through which he provided medical services to Plaintiff Jeff Potts. Defendant Durrani can be served at his principal place of business located at 4555 Lake Forest Dr., Suite 150, Cincinnati, Ohio 45242.

4. At all times relevant herein, CAST, held itself out to the public, and specifically to Plaintiffs, as a company providing competent and qualified medical, nursing and surgical services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

5. At all times relevant herein, Defendant Durrani was an agent, ostensible agent, servant, and/or employee of CAST, and was acting within the course and scope of his agency and/or employment at the time of his care and treatment of Jeff Potts.

6. At all times relevant herein, Defendant Durrani owed a duty to Plaintiffs to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

7. At all times relevant herein, Defendant CAST owed a duty to Plaintiffs to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

8. At all times relevant herein, Defendant CAST owed a duty to Plaintiffs to provide competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

9. At all times relevant herein, Dr. Duranni was the supervising attending Physician when care and treatment was provided to Jeff Potts at the offices of Defendant Durrani and CAST and other hospital facilities.

10. Plaintiffs filed a Complaint against Defendants Durrani and CAST on April 25, 2011.

11. Said Complaint against Defendants was subsequently dismissed without prejudice on September 22, 2011.

ELECTRONICALLY FILED 08/29/2012 14:22 / IFIJ / A 1206877 / CONFIRMATION NUMBER 180493

12. An affidavit of merit is attached.

## FACTUAL ALLEGATIONS

13. Plaintiffs hereby incorporate by reference all of the allegations and averments set forth above as if fully rewritten herein.

14. On or about June 1, 2010, Plaintiff Jeff Potts sought treatment from CAST for management of back pain.

15. Dr. Tyab of CAST recommended that Plaintiff obtain an MRI, among other measures.

16. On the day the MRI was performed, Defendant Durrani's office contacted Plaintiff and advised that Plaintiff needed surgery.

17. On or about October 15, 2010, Jeff Potts submitted to the care, treatment and management of these Defendants for the performance of spinal surgery including direct lumbar interbody fusion of L3/L4, lumbar discectomy of L3/L4, posterior spinal instrumentation of L3/L4 using pedicle screws, posterior spinal fusion using autograft and allograft at L3/L4, exploration of L5/S1, and lumbar laminectomy of L5/S1 with bilateral foraminotomy. Surgery was performed in the lateral position with the right flank up by Defendant Durrani.

18. Upon information and belief, Defendant Durrani had had his privileges suspended revoked, or had been given the option to voluntarily resign his privileges in lieu of having his privileges suspended or revoked from one or more hospitals.

19. Preoperatively, these Defendants did not properly inform Jeff and Cheri Potts that Defendant Durrani had his privileges terminated from several hospital facilities.

20. Immediately postoperatively, and continuing thereafter, Jeff Potts had decreased leg pain, but increased severe back pain and abdominal pain.

21. Defendant Durrani discharged Jeff Potts from Good Samaritan Hospital on or about October 18, 2010.

22. On or about October 19, 2010, Jeff Potts returned to the emergency room at Good Samaritan Hospital for severe pain, at which time where he underwent exploratory surgery.

3

23. On or about October 19, 2010, Jeff Potts was found to have a perforated cecum described as a "through-and-through colostomy which created from the previous trocar site entry…through the right flank through-and-through the colon into the iliopsoas muscle."

24. The cecum is the beginning of the large intestine, and contains much bacteria.

25. Jeff Potts has required additional surgery to repair his colon and months of antibiotic therapy.

26. Defendants were negligent and deviated from the standard of care including, but not limited to, failure to appropriately perform surgery, failing to prevent and timely recognize, diagnose and treat intraoperative and post-operative injuries, including but not limited to bowel perforation and infection.

27. As a direct and proximate result of the negligence of these Defendants, Jeff Potts has endured physical pain and emotional suffering, additional and unnecessary medical expenses, lost wages and benefits, lost opportunities, scarring, permanent physical disfigurement, physical and psychological injuries, inconveniences, and other damages as outlined in this Complaint and will continue to do so in the future.

28. As a direct and proximate result of the negligence of these Defendants, Cheri Potts has endured the loss of love, affection, care, companionship, guidance, support and consortium of her husband Jeff Potts, and further has suffered lost wages and benefits, lost opportunities, unnecessary medical expenses, inconveniences, fear and apprehension.

## COUNT ONE
## MEDICAL NEGLIGENCE OF DEFENDANT DURRANI

29. Plaintiffs incorporate, adopt and reallege as if fully restated herein, those allegations contained in each preceding paragraph.

30. Defendant Durrani owed Plaintiffs the duty to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

31. Defendant Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, providing insufficient preoperative information concerning the need or lack of need for surgery, negligent performance of the surgery described herein, and medical mismanagement and

4

mistreatment of Plaintiff, including, but not limited to improper performance of the surgery, failure to recognize and correct his surgical mistake, failure to take appropriate measures to prevent infection, failure to recognize and appropriately address post-operative changes in condition and post-operative complications, failure to obtain proper informed consent, improper follow-up care, and lax documentation.

32. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care by Defendant Durrani, Plaintiffs were caused to sustain severe and grievous injuries, severe and prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

## COUNT TWO
## MEDICAL NEGLIGENCE OF DEFENDANT CAST

33. Plaintiffs incorporate, adopt and re-allege as if fully restated herein each and every allegation contained within the above paragraphs and further state:

34. Defendant CAST owed its patient Jeff Potts the duty to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

35. Defendant CAST breached that duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent mismanagement, negligent diagnosis and negligent treatment of Plaintiffs.

36. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care by Defendant CAST, Plaintiffs were caused to sustain severe and grievous injuries, severe and prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

## COUNT THREE
## VICARIOUS LIABILITY OF DEFENDANT CAST

ELECTRONICALLY FILED 08/29/2012 14:22 / IFIJ / A 1206877 / CONFIRMATION NUMBER 180493

37. Plaintiffs incorporate, adopt and reallege as if fully restated herein each and every allegation contained within the above paragraphs and further state:

38. At all times relevant, Defendant Durrani was a shareholder, director, officer, agent and/or employee of CAST.

39. Defendant Durrani was performing within the scope of his employment when rendering medical services or treatment to Plaintiff.

40. Defendant CAST is responsible for harm caused by the actions of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

41. Defendant CAST is vicariously liable for the negligent actions of Defendant Durrani as alleged in this Complaint.

42. As a direct and proximate result of Defendant CAST's acts and omissions as set forth in this Complaint, Plaintiffs sustained permanent injuries and monetary damages as set forth in this Complaint.

## COUNT FOUR
## NEGLIGENT HIRING/RETETION BY CAST

43. Plaintiffs incorporate, adopt and re-allege as if fully restated herein each and every allegation contained within the above paragraphs and further state:

44. Upon information and belief, Defendant Durrani had privileges terminated, revoked or otherwise suspended or acted upon negatively at his places of previous employment as a result of misconduct, substandard care, medical negligence and/or negative outcomes.

45. Defendant CAST owed a duty to its patients, including Plaintiffs, to exercise reasonable care in the selection, retention and supervision of its employees, including Defendant Durrani.

46. Defendant CAST breached its duty to exercise reasonable care in the selection, employment and/or retention of employees when it employed and allowed Defendnat Durrani to treat patients in spite of the knowledge that Defendant Durrani's privileges had been terminated, revoked or otherwise suspended or acted upon negatively at one or more of his previous places of employment or places at which he held privileges.

6

47. As a direct and proximate result of Defendant CAST's breach of its duties, Plaintiffs sustained permanent injuries and monetary damages as set forth in this Complaint.

## COUNT FIVE
## NEGLIGENT SUPERVISION AND TRAINING BY CAST

48. Plaintiffs incorporate, adopt and re-allege as if fully restated herein each and every allegation contained within the above paragraphs and further state:

49. Defendant CAST owed a duty to its patients and families, including Plaintiffs, to exercise reasonable care in the supervision and training of its agents, employees and servants, including Defendant Durrani.

50. Defendant CAST breached its duties to exercise reasonable care in the supervision and training of its agents, servants and employees, including the failure to create and implement policies and procedures, improperly granting privileges to Defendant Durrani, negligently allowing Defendant Durrani to render medical services, including surgery, on patients including Plaintiff Jeff Potts, failure to properly supervise its physicians including Defendant Durrani, and in permitting or failing to prevent the negligent and otherwise tortious conduct of Defendant Durrani, as outlined in this Complaint, upon their premises, under their corporate name and contracts, and/or with instrumentalities under their control.

51. Defendant CAST knew or had reason to know that such failures created a risk of harm to Plaintiffs.

52. As a direct and proximate result of Defendant CAST's breach of its duties, Plaintiffs sustained permanent injuries and monetary damages as set forth in this Complaint.

## COUNT SIX
## BATTERY BY DEFENDANT DURRANI

53. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

54. Defendant Durrani committed battery against Jeff Potts by performing medical procedures on Jeff Potts for which he did not properly obtain informed consent, including a failure to appropriately advise Plaintiff of the particular procedures and surgeries that were being performed, failure to provide appropriate information regarding the necessity of the procedures that were to be performed, failure to obtain consent for those

ELECTRONICALLY FILED 08/29/2012 14:22 / IFIJ / A 1206877 / CONFIRMATION NUMBER 180493

procedures, and by physically striking and causing harm to the bowel of Jeff Potts without the consent of Jeff Potts.

55. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

### COUNT SEVEN - LACK OF INFORMED CONSENT (DURRANI)

56. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

57. Defendant Durrani had a duty to inform Plaintiff, Jeff Potts of material risks and dangers inherent or potentially involved in the surgery of October 15, 2010, including but not limited to bowel perforation, infection, the need for additional surgeries, and sepsis.

58. Defendant Durrani failed to inform Plaintiffs of the material risks and dangers inherent or potentially involved in the procedures performed on October 15, 2010.

59. Plaintiff Jeff Potts subsequently developed severe and grievous injuries as a direct and proximate result of lack of informed consent, and other acts and omissions as outlined in this Complaint.

60. Had Plaintiff, Jeff Potts been appropriately informed of the need or lack of need for surgery and the risks of such procedures, he would not have undergone surgery by Defendant Durrani.

### COUNT EIGHT – FRAUD
### DURRANI

61. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

62. Defendant Durrani made material, false representations to Plaintiff, Jeff Potts in the course of his care and treatment. Such false representations include, but are not limited to improper information regarding the particular procedures that were to be performed on Jeff Potts; improper information regarding the necessity of the surgical procedures to be performed, that no complications had arisen during the surgery; that the bowel

8

perforation which was ultimately discovered was not caused by Defendant Durrani, and that Defendant Durrani was a competent physician.

63. Moreover, Defendant Durrani's failure to disclose significant information about Plaintiff's condition and the medical procedures that were planned, attempted and/or performed on Plaintiff also amounted to material false misrepresentations. Such misrepresentations included, but are not limited to the failure to accurately inform Plaintiff of his medical condition including but not limited to the particular conditions that required surgery, existence of tear in the cecum, and/or discovery of the tear, the unperformed, incomplete and/or improper repair of the tear of the cecum during the October 15, 2010 surgery, the material and significant risks inherent or potentially involved with the surgical procedures performed by Defendant Durrani as outlined in the preceding paragraphs, the existence of infection in the surgical site and perforation site, and the suspicion of a tear of the cecum during and immediately after the October 15, 2010 surgery.

64. Defendant Durrani further made material misrepresentation to Plaintiffs by failing to disclose significant information regarding Defendant Durrani's competency to practice medicine, history of negative medical outcomes, prior medical negligence, and professional history involving the revocation, termination, suspension or other negative actions involving Defendant Durrani's employment and privileges and previous health care facilities and on previous patients.

65. Defendant Durrani knew that such representations were false, and/or Defendant Durrani made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred;

66. Defendant Durrani made the misrepresentations with the intent of misleading Plaintiffs into relying upon them;

67. Plaintiff Jeff Potts and his family justifiably relied upon the material misrepresentations of Defendant Durrani when making the decision to undergo the preoperative care and subsequent surgery on October 15, 2010, as well as in their decision to continue treatment with Defendants following the October 15, 2010 surgery.

68. As a direct and proximate result of the aforementioned, Plaintiff did undergo the October 15, 2010 surgery and Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of earnings and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

ELECTRONICALLY FILED 08/29/2012 14:22 / IFIJ / A 1206877 / CONFIRMATION NUMBER 180493

## COUNT NINE – FRAUD
## CAST

69. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

70. Defendant CAST made material, false representations to Plaintiff, Jeff Potts in the course of his care and treatment. Such false representations include, but are not limited to omitting significant information regarding Defendant Durrani's competency or lack thereof as a medical provider, omitting significant information regarding Defendant Durrani's history of negative medical outcomes, and professional history involving the revocation, termination, suspension or other negative actions involving Defendant Durrani's employment and privileges and previous health care facilities. The failure to disclose this information, coupled with allowing Defendant Durrani to maintain privileges and holding Defendant Durrani out as a competent physician amounted to a material misrepresentation of fact to Defendants' patients, including Plaintiffs herein.

71. Defendants knew that such misrepresentations were false, and/or Defendants made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred;

72. Defendants made the misrepresentations with the intent of misleading Plaintiffs into relying upon them;

73. Plaintiff Jeff Potts and his family justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo preoperative care, surgery on October 15, 2010, and post-operative care.

74. As a direct and proximate result of the aforementioned, Plaintiff did undergo the October 15, 2010 surgery and related care, and sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of earnings and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

## COUNT TEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

10

76. Defendant Durrani intended to, and in fact, caused emotional distress to the Plaintiffs.

77. Defendant Durrani's conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

78. Defendant Durrani was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

79. The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT ELEVEN – LOSS OF CONSORTIUM

80. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

81. Plaintiff Jeff Potts is married to Plaintiff Cheri Potts, and Cheri Potts brings this separate cause of action for the loss of consortium, companionship, love, and affection of her husband, Jeff Potts, which loss was directly and proximately caused by the negligent acts, omissions, recklessness, and intentional conduct of the Defendants as outlined in this Complaint.

82. As a direct and proximate result of the conduct of the Defendants as outlined in this Complaint, Plaintiff Cheri Potts has incurred, and will continue to incur the loss of enjoyment of her husband, loss of love, significant medical expenses and miscellaneous expenses, costs, charges, lost work time, inconveniences, lost benefits, and lost work opportunities.

## COUNT TWELVE – PUNITIVE DAMAGES

83. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

11

84. Defendants' actions were outrageous, wanton, reckless, reprehensible, egregious, malicious and constituted aggravated and/or egregious fraud, and said actions caused Plaintiffs permanent injuries and monetary damages as set forth in this Complaint.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiffs demand judgment against Defendant on all claims. Plaintiffs further request:

1. Costs associated with this action;
2. Interest;
3. Punitive damages;
4. Reasonable attorneys' fees;
5. All compensatory damages;
6. Trial by jury; and
7. All other relief this court deems fitting and proper.

Respectfully submitted:

\s\Eric C. Deters
Eric C. Deters, Esq.
Eric C. Deters & Partners, P.S.C.
5247 Madison Ave.
Independence, KY 41051
Phone: 859-363-1900
Fax: 859-363-1444
Attorney for Plaintiff

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.

\s\Eric C. Deters
Eric Deters, Esq.

12

<u>Affidavit of Merit</u>

I, Keith Wilkey, M.D., after being duly sworn and cautioned state as follows:

1. I have reviewed all relevant medical records reasonably available about Jeff Potts concerning the allegations of medical negligence.

2. I am familiar with the applicable standard of care.

3. Based upon my review of this record, my education, my training and experience, it is my belief, to a reasonable degree of medical probability that the care provided by the Defendant, Abubakar Durrani, M.D. was negligent and this negligence caused injury to Jeff Potts.

4. I devote at least on-half my professional time to the active clinical practice in my field of licensure, or to its instruction in an accredited school.

5. My curriculum vitae is attached.

**Further affiant sayeth naught.**

_____
Keith Wilkey, M.D.

State of _Missouri_
County of _St. Charles_

The foregoing affidavit of merit was subscribed, sworn to and acknowledged, this _21_ day of _August_, 2012 before me, a Notary Public by Keith Wilkey, M.D.

/S/ Seal

_Angela Kay Poinsett_
Notary

My commission expires: _07/18/2015_

ANGELA POINSETT
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: July 18, 2015
Commission Number: 11133615